IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHLEY SCHEMM,<br>        **Plaintiff,**<br><br>v.<br><br>COURTYARD MANAGEMENT<br>CORPORATION,<br>        **Defendant.** | CIVIL ACTION<br><br><br><br>NO.  25CV3097 |

## MEMORANDUM OPINION

Plaintiff Ashley Schemm ("Schemm") has sued her former employer, Defendant Courtyard Management LLC[1] ("Courtyard") for, *inter alia*, pregnancy discrimination and retaliation under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*. Courtyard has filed a Motion pursuant to 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Schemm's retaliation claim as well as her claim of pregnancy discrimination to the extent that it is premised on a failure-to-accommodate.  Fed. R. Civ. P. 12(b)(6).

I.     FACTUAL BACKGROUND

All facts are derived from Schemm's Amended Complaint and are taken as true on a motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  Schemm was hired as a bartender in January 2023.  She was qualified for the role and performed her job well.  Although she was pregnant at the time she was hired, she did not inform Courtyard until some months later when she told her manager, Bridget Murray, that: (1) she was pregnant; (2) she was due in a few months; (3) she intended to work as long as possible, but would need maternity leave at or around the time of the baby's birth; and, (4) she was homosexual.

---
[1] Improperly identified on the docket as Courtyard Management Corporation, but Defendant has both clarified the proper label and continued to engage in this case as if properly identified.

Following this conversation with Murray, Schemm noticed several changes in how Courtyard and its staff treated her. Murray and another manager, David Arcaro, began assigning her "side work tasks" outside the scope of her bartending duties—including scrubbing floors and wall tiles. If she sat down to roll silverware while the restaurant was closed, they "yell[ed] at" her.

She also alleges that prior to revealing her pregnancy she was routinely granted bathroom breaks when she requested them—Murray never denied any such requests—but, after their March conversation Murray began to do so. And, when she suffered particularly bad episodes of morning sickness which "occasionally" made her ten minutes late to work, she was written up for late arrivals—write ups that had not been handed out to her before she told her employer that she was pregnant: at that time—pre-pregnancy—she had simply told management she would be slightly late, and management responded that "it was fine."

Other, non-pregnant, heterosexual coworkers were not similarly treated; her coworkers could arrive late without discipline and were permitted to sit while rolling silverware.

A few weeks after Schemm told Murray she was pregnant, she was suspended pending termination, allegedly on account of the disciplines she had racked up. Schemm went to the general manager, who she knew only as Kostas, to discuss how she had been treated by Murray and Arcaro but he pooh-poohed her complaints. Three days later, she was fired.

II. **SCHEMM HAS EXHAUSTED HER ADMINISTRATIVE REMEDIES**

Schemm filed a complaint with the Pennsylvania Human Relations Commission from which she received a right to sue letter. Nevertheless, Courtyard argues that she has failed to exhaust her administrative remedies with respect to her claim that she was terminated in retaliation for complaining to management.

2

A claim is administratively exhausted if "the acts alleged in the subsequent [judicial complaint]" are: (1) "fairly within the scope of . . . the prior [administrative] complaint or (2) the investigation arising therefrom." *Simko v. U.S. Steel Corp.*, 992 F.3d 198, 207 (3d Cir. 2021) (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)); *Ackah v. Hershey Foods Corp.*, 236 F. Supp.2d 440, 444 (M.D. Pa. 2002) (applying *Waiters*' Title VII framework to PHRA claims). Courtyard focuses on the first question contending that Schemm's "PHRC complaint did not contain any allegation that she complained to management about discriminatory treatment . . . and did not assert a claim that her termination was in retaliation for any complaint."

But that is not the case: Schemm expressly mentioned "retaliation" on two separate occasions in her PHRC complaint—first, as a basis for relief in her preliminary statement, and second, as one of the grounds upon which Courtyard allegedly violated the PHRA. Specifically, she noted in her PHRC complaint that after she "notified her supervisors" of her pregnancy, her need for pregnancy-related accommodations, and her sexual orientation, she began receiving disciplinary write-ups for pregnancy-related attendance issues and ultimately faced termination. She added that she "was subjected to discrimination *and termination* based on her pregnancy, sexual orientation, . . . and proper request for pregnancy accommodations." (emphasis added). Accordingly, Schemm put Courtyard on notice of her retaliation claim by both explicitly referencing retaliation and incorporating supporting allegations within her PHRC complaint. Thus, she has satisfied the first prong of exhaustion test as the retaliatory acts alleged in her subsequent judicial complaint fall "fairly within the scope" of her prior PHRC complaint. *See e.g.*, *Waiters*, 729 F.2d at 238 (finding that plaintiff's informal and subsequent formal EEOC complaints shared the same core grievance of retaliation); *Ackah*, 236 F. Supp.2d at 444 ("[T]he specific allegations within the instant complaint 'fairly encompass' those set forth within the PHRC

complaint."); *Wright v. Pennsylvania*, 2002 U.S. Dist. LEXIS 23495, at *5 (E.D. Pa. Nov. 14, 2002) ("[T]he termination is 'fairly encompassed' within the [administrative] charge.").

Further, "the acts alleged in the subsequent [judicial complaint] are fairly within the scope of . . . the investigation arising therefrom." 992 F.3d at 207. The relevant inquiry centers on "the scope of the [PHRA] investigation that would reasonably [be expected to] grow out of [the initial PHRC complaint,]" not what the investigation actually covered. *Id.* at 209 (quoting *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978)); *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976); *see also Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984) ("Whether the actual [agency] investigation uncovered any evidence of retaliation is of no consequence.") Courts must, thus, evaluate "whether the [judicial complaint] arises from the same set of facts that support the [prior administrative] charge and . . . advances the same theory of discrimination as the [prior administrative] charge." *Simko*, 992 F.3d at 209.

Schemm's retaliation claim—specifically with respect to her allegation that Courtyard retaliated against her for complaining to General Manager Kostas—can "reasonably [be expected to] grow out of" the circumstances underlying her PHRC complaint. That complaint and the one before the Court here arise from the same set of facts, involve the same actors, allege the same employer conduct, and advance the same theory of retaliation. *See Simko*, 992 F.3d at 211. Thus, Schemm satisfies the second avenue of the exhaustion inquiry as well.

Because Schemm has properly exhausted her retaliation claim through her PHRC complaint, Courtyard's Motion to Dismiss her retaliation claim for failure to exhaust her administrative remedies shall be denied.

### III. LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

4

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. When analyzing a motion to dismiss, the Complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210. Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id*. at 210-11.

       The PHRA is an anti-discrimination law enacted to combat discrimination based on personal characteristics. 43 P.S. § 952. It is interpreted as identical to federal antidiscrimination laws except where there are specific and material differences between them. *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 327 (3d Cir. 2015) (quotes and citation omitted) (abrogated on other grounds); *see also Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083-84 (3d Cir. 1995), *cert denied*, 518 U.S. 1005 (1996) (noting that PHRA and Title VII are interpreted similarly); *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996); *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 509 n. 2 (3d Cir. 2004) ("The same legal standards and analysis are applicable to claims under both the Age Discrimination in Employment Act ("ADEA") and the PHRA" (cleaned up)).

       Discrimination based on pregnancy as a status violates the PHRA's protections against sex discrimination. *Dallastown Area Sch. Dist. v. Pa. Hum. Rel. Comm'n*, 460 A.2d 878, 880 (Pa. Commw. 1983). Since "pregnancy is not coextensive with disability . . . the mandate of the

5

[PHRA] is not that pregnancy be treated as a disability, but that pregnancy-related disability be treated like any other disability." *Trans World Airlines, Inc. v. City of Phila., Comm'n of Human Rel.*, 403 A.2d 1057, 1060 (Pa. Commw. 1979). In other words, the PHRA does not consider pregnancy itself a disability but does concern itself with disabilities arising from pregnancy.

IV. **ANALYSIS**

A. **Dismissal of the Failure to Accommodate Subclaim**

Courtyard moves for a dismissal of Schemm's pregnancy discrimination claim to the extent it relies on a failure to accommodate theory. Its entire argument is predicated on an analysis of the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. § 2000gg *et seq*.

But Schemm's pregnancy discrimination claim is brought under the PHRA, not the PWFA. It is a well-established rule of law that "[t]he plaintiff is the master of the complaint and therefore controls much about her suit . . . [s]he gets to determine *which substantive claims to bring* against which defendants." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35-6 (2025) (emphasis added).

Courtyard's focus on the PWFA distracts it from the *actual* failure-to-accommodate pregnancy claim which is brought under the PHRA which claim, accordingly, shall not be dismissed.

B. **Schemm's Retaliation Claim is Not Duplicative of Her Discrimination Claim**

Courtyard next argues that Schemm's retaliation claim is duplicative and coextensive with her failure to accommodate discrimination claim.

Under the PHRA, a plaintiff claiming retaliation must show that: (1) they engaged in a protected activity; (2) they suffered an adverse employment decision; and, (3) there exists a causal connection between the two. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir.

6

2007).  Requesting accommodations is a protected activity, as is making "informal protests of discriminatory . . . practices, including making complaints to management." *Moore v. City of Phila.*, 461 F.3d 331, 343 (3d Cir. 2006).  For adverse action to qualify as retaliation, it must be enough to dissuade "a reasonable worker from making or supporting" the protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  Since "petty slights, minor annoyances, and simple lack of good manners will not create such deterrence[,]" retaliation is actionable only where it produces material injury or harm sufficient to deter opposition to or reporting of employer's misconduct.  *Id.* at 67-8.

Courtyard contends that Schemm's retaliation claim should be dismissed because it is coextensive with her failure-to-accommodate claim *i.e.* that Schemm is trying to satisfy retaliation's adverse action element using the alleged failures to accommodate her pregnancy. Courtyard argues that where a retaliation claim is based solely on an employer's failure to accommodate — *i.e.* where it is not separate and apart from, or is a reiteration of, the failure to accommodate claim — it must be dismissed.

In support, Courtyard relies on a non-precedential opinion *Pagonakis v. Express LLC* which determined that in the case before it a failure to accommodate could not "be characterized as a retaliation claim." 315 Fed. App'x 425, 431 (3d Cir. 2009).[2]  Pagonakis was a disabled salesperson for Express.  *Id.* at 426.  Express' management was aware of her disabilities and

---

[2] Courtyard also cites several other non-precedential cases in support of this argument.  *Harris v. G.B.K. Transp., Inc.*, 2025 WL 663599, at *6 (M.D. Pa. Feb. 28, 2025) and *Barnard v. Lackawana Cnty.*, 2017 WL 4233030, at *7 (M.D. Pa. Sept. 25, 2017) both cite to *Pagonakis*, 315 Fed. App'x at 431, for their critical logic, and therefore are unpersuasive for the same reasons.  The final citation, *Semcheski v. Cunningham Lindsey U.S., Inc.*, 2018 WL 3417219, at *6 (M.D. Pa. July 13, 2018), is similarly unpersuasive.  Semcheski filed a retaliation claim in which the alleged retaliation was a failure to provide reasonable accommodations.  However, because the true substance of the claim was whether the requested accommodations were reasonable or not, the court held that the retaliation claim was a disguised failure to accommodate claim and therefore granted summary judgment.  *Id.*  Semcheski is distinguishable because Schemm does not hinge her retaliation claim on just failures to accommodate, but alleges other, separate instances of retaliatory conduct.

7

offered accommodations accordingly. *Id.* However, several years into Pagonakis' time with Express, Express' HR department withdrew them. *Id.* at 427. The loss of accommodations forced Pagonakis to take a leave of absence, during which her doctor tendered a list of requested accommodations. *Id.* at 427. Upon her return, Express failed to provide her with the requested accommodations, or restore those previously in place. *Id.* Pagonakis eventually took a second leave of absence before ultimately resigning. *Id.*

Pagonakis sued Express for both discrimination and retaliation under the ADA. The district court granted summary judgment, ruling that "no reasonable juror could find" that she met the elements of ADA retaliation. *Id.* at 428.

On appeal, the Third Circuit affirmed, reasoning that since Pagonakis' ostensible retaliation claim was in truth a failure-to-accommodate discrimination claim, summary judgment was appropriate. *Id.* at 431. Pagonakis' retaliation claim was predicated on "alleged failures to fulfill the affirmative duties prescribed by the ADA . . . not a claim based on alleged actions prohibited by the ADA." *Id.* at 431 (citing *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 396 (2002)) (internal quotations omitted). In other words, the court concluded that Pagonakis' retaliation claim was based on *discriminatory* conduct (*i.e.* failing to provide reasonable accommodations), not *retaliatory* conduct (*i.e.* harassing Pagonakis for a protected activity). Therefore, Pagonakis' retaliation claim was properly dismissed because, at its core, it had always been duplicative with her discrimination claim.

Courtyard applies the same argument against Schemm: that like Pagonakis, her retaliation claim is a Trojan Horse for a duplicative failure to accommodate claim.

Even if it was binding precedent, *Pagonakis* is unpersuasive: its holding is

8

distinguishable in two critical ways.[3]  First, as a general matter, Schemm is squarely within his rights to plead retaliation and discrimination as alternative theories of liability.  The Federal Rules of Civil Procedure permit the pleading of alternate theories, even contradictory ones.  Fed. R. Civ. P. 8(d); *Indep. Enters. Inc. v. Pitt. Water & Sewer Auth.*, 103 F.3d 1165, 1175-76 (3d Cir. 1997) (ruling that the Federal Rules of Civil Procedure permit alternative and inconsistent claims at the motion to dismiss stage).  Courtyard offers no authority to indicate that this rule is obviated in PHRA claims.  On the contrary, there are plentiful cases which illustrate it is not.  *See, e.g.*, *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787-89 (3d Cir. 2016) (reversing dismissal based on an erroneous understanding that a Title VII discrimination plaintiff must identify a specific theory of discrimination, when in fact plaintiffs may plead alternate theories of discrimination provided that "prior to instructing the jury, the judge decides whether one or both theories applies."); *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp.3d 115, 133-34 (E.D. Pa. 2020) (declining to dismiss an ADA hostile work environment claim predicated on alternate theories of sexual identity discrimination or neuroanatomical disability ); *Weaver v. GAT Airline Ground Support, Inc.*, 2024 WL 757030, at *10-11 (W.D. Pa. Feb. 20, 2024) (denying a motion to dismiss, in part, because defendant "misunderst[ood] [] plaintiff's right to assert alternative theories of liability in violation of Title VII[.]")

Second, as Schemm argues, material factual differences further distinguish *Pagonakis* from the present case.  The crux of the *Pagonakis* ruling is that the *only* alleged retaliatory conduct was the failure to accommodate; there were no other retaliatory actions.  *See* 315 Fed. App'x at 431.  If Schemm's retaliation claim rested solely on the denial of sufficient bathroom

---

[3] In addition, as a creature of summary judgment, *Pagonakis* is not yet salient for this matter—which is before the Court on a motion to dismiss.

9

breaks, a seat while rolling silverware, or a flexible arrival time, *Pagonakis* would be more persuasive. However, she also alleges harms unrelated or subsidiary to these requests, including assignment of tasks outside her duties and written disciplines for tardiness.

None of these are duplicative of a failure-to-accommodate claim for the simple reason that they are not failures to accommodate. There was no accommodation being requested when Schemm was told to scrub tiles and floors, a responsibility beyond the scope of a bartender's duties. These new tasks can constitute retaliation. *See, e.g.*, *Bearly v. Friendly Ice Cream Corp.*, 322 F. Supp.2d 563, 577-78 (M.D. Pa. 2004) (holding that changing bookkeeper's role to include serving as a hostess and kitchen scullion "could reasonably be considered an adverse employment action" given these latter roles' different "working conditions, status, skill, and authority."); *Jakomas v. City of Pitt.*, 342 F. Supp.3d 632, 645 (W.D. Pa. 2018) (holding that plaintiff suffered an adverse employment decision when she was tasked with "organizing and cleaning" the office, despite such tasks being outside her role as an administrator).

Receiving written disciplines is a frequent flag for retaliatory conduct, especially in conjunction with concrete ramifications to employees' conditions of employment or compensation. *See, e.g.*, *Weston v. Pa.*, 251 F.3d 420, 430-31 (3d Cir. 2001) (overruled on other grounds) (holding that written reprimands can constitute adverse employment action when they have material effect or are permanently part of the employee's file); *Alers v. City of Phila.*, 919 F. Supp.2d 528, 549 (E.D. Pa. 2013) (dismissing retaliation claim based workplace investigation and written disciplines because plaintiff did not show enough to support he suffered "material injury or harm"). These reprimands were the basis for suspending Schemm and ultimately firing her. Termination is the adverse employment action par excellence. *See, e.g.*, *Le Boon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (holding termination of

10

employment "clearly" suffices as an adverse action); *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015) (noting that teacher's termination was one of the many adverse actions taken by school district against the plaintiff); *Briggs v. Temple Univ.*, 339 F. Supp.3d 466, 489-91, 498 (E.D. Pa. 2018) (holding that "there is no doubt" that plaintiff's firing constituted a "legally sufficient evidentiary basis . . . to find that she suffered an adverse employment decision.").

Taken together, the assignment of out-of-role tasks, written disciplines, and ultimate termination do not fit any failure to accommodate theory.  Rather, they sit comfortably within the limits of retaliatory action.  Therefore, Schemm has alleged sufficient facts to support an inference that her PHRA retaliation claim is distinct from her failure-to-accommodate discrimination claim.  Courtyard's Motion on that ground shall be denied.

### C.  Schemm has Alleged Sufficient Facts to Support Causation

Courtyard's final argument is that the retaliation claim must be dismissed because Schemm "does not allege facts that would establish a causal connection between any protected conduct and her termination."

Causation may be proved directly through direct evidence of retaliation, or through indirect evidence sufficient to "establish a causal connection."  *Abramson v. William Paterson College*, 260 F.3d 265, 288 (3d Cir. 1988).  In the present case, Schemm does not plead any direct evidence of retaliatory intent by Courtyard or its agents.

To survive this Motion, Schemm must therefore show indirect evidence of causation.  Timing is a source of indirect evidence as the "temporal proximity between the protected activity and the [adverse employment action] is itself sufficient to establish a [causation]."  *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997).  The "timing of the alleged retaliation action

must be unusually suggestive of retaliatory motive before a causal link will be inferred." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (internal citations and quotations omitted). "The amount of time between protected activity and alleged retaliation is a circumstance to be considered by a fact-finder in determining if the plaintiff has established the required causation." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003). Spans of 2-10 days can support finding a causative link, but spans "over two months" cannot. *Williams v. Phila. Housing Auth. Police Dep't*, 380 F.3d 751, 760 (3d. Cir. 2004) (overruled in part on other grounds).

The parties agree that Schemm engaged in protected activity in March 2023, when she informed Murray that she was pregnant and requested maternity leave. *See Moore*, 461 F.3d at 343 (holding that requests for accommodations are a protected activity). The time between this request and her termination was 6-8 weeks, a period sort enough to support a causal inference between protected activity and adverse employment action. *See Williams*, 380 F.3d at 760.

Reading the allegations of her Complaint in the light most favorable to Schemm, as is required on a motion to dismiss, the imposition of out-of-role side work constitutes an adverse action. Schemm was hired as a bartender. Yet, after she requested maternity leave, Murray and Arcaro ordered her to scrub floors and walls. Out-of-role assignments can constitute adverse employment action where they are degrading, of lesser skill, or otherwise substantially worse than ordinary duties. *See, e.g., Bearly*, 322 F. Supp.2d at 577-78 (holding that changing bookkeeper's role to include serving as a hostess and kitchen scullion "could reasonably be considered an adverse employment action" given these latter roles' different "working conditions, status, skill, and authority."); *Jakomas* 342 F. Supp.3d at 645 (holding that plaintiff suffered an adverse employment decision when she was tasked with "organizing and cleaning"

the office, despite such tasks being outside her role as an administrator). Ordering Schemm—a bar tender—to scrub floors and walls plausibly qualifies as a degrading, less skilled, and more physically demanding change from her ordinary duties of mixing drinks and serving customers. The temporal proximity of Schemm's request for maternity leave and orders to scrub floors and walls is close enough to be suggestive of a causal connection between the two. *See Krouse*, 126 F.3d at 500; *Williams*, 380 F.3d at 760.

    An appropriate Order follows.

                  **BY THE COURT:**

                  **S/WENDY BEETLESTONE**

                  _____
                  **WENDY BEETLESTONE, C.J.**